## COUNTY OF PROVIDENCE, MARCH TERM, 1862, AT PROVIDENCE.

PRESENT:

Hon. SAMUEL AMES, Chief Justice.
Hon. GEORGE A. BRAYTON, Associate Justice.

Bank of North America *v.* J. H. Sturdy & Co.

7 109
18 572

Where, under a prospective arrangement between a bank and a firm of manufacturing jewelers, it was agreed, that the former should discount, and continue to discount, the trade or business paper of the latter, to a certain amount, and under this arrangement, the defendants palmed upon the plaintiffs, to their great loss, as and for the trade paper of the firm, accommodation paper made by their irresponsible workmen, in such amounts, in dollars and cents, and dated and made payable at such places as to simulate their trade paper, *it was held*, that coupling the arrangement with each successive offer of paper under it, the jury were justified, in an action for the deceit, in finding, as alleged in the declaration, that the discounts were procured by the false and fraudulent representations of the defendants that such paper was their trade paper, although they did not find that such fraud was designed at the time the arrangement was made; the jury being at liberty, if the proof warranted it, in construing

each offer under the arrangement to be a recognition and reassertion of the affirmation contained in it.

In such case, it is no defence, that the directors of the bank might, by minute and searching inquiry about the paper thus offered, have ascertained its true character.

THIS was an action for deceit, in which the writ was served only on Preston Bennett and Joseph W. Nichols, two of the members of a firm of manufacturing jewelers, which did business in Wrentham, under the name of J. H. Sturdy & Co.; the other members of the firm not having been served. The declaration, in substance, charged the defendants with having procured the plaintiffs, an incorporated bank in the City of Providence, to loan to them, by way of discount, a large sum of money, to wit, thirty thousand dollars, by false and fraudulent representations that they were worth, over and above their liabilities, the sum of seventy thousand dollars, and that the notes presented by them for discount were the trade paper of the defendants, received by them in the regular course of their business, when, in truth and in fact, the defendants were largely insolvent, and the notes presented for discount were made for the accommodation of the defendants, and without consideration, by persons of little or no pecuniary responsibility; many of the makers of said notes being the office boys, shop hands, and common laborers of the defendants.

The case was twice tried before the Chief Justice, with a jury, under the general issue; once, at the September term of this court, 1860, for the county of Providence, when the defendants submitted no evidence, and, again, at the present term of this court, when a full trial was had; and at both trials the plaintiffs recovered a verdict. There was some conflict of testimony about the making of the representations as laid, but very slight, about the insolvency of the defendants; and it was clearly proved, that the defendants were in the habit of sending to Bennett, who resided in Providence, bundles of blank notes, signed by their clerks and shop hands,—persons of no responsibility,—in Wrentham, Massachusetts, where the defendants manufactured their jewelry, and that the blanks were filled up by Bennett, in various, and, usually, odd amounts, and dated and payable at New York, Philadelphia, &c., the places where the defendants sold their

goods ; and that he procured such paper to be discounted at the banks with which the firm did business. It was the fraud in imposing upon them this species of paper, for which the plaintiffs, in part, sought their redress in this action. Upon this part of the case, the plaintiffs submitted evidence tending to prove, that Bennett, acting for his firm, made an arrangement with the plaintiff bank, through a committee of its directors, that they should take a part of the line of discounts before enjoyed by the defendants at the City Bank of Providence, and should discount, and continue to discount, for the firm, about a thousand dollars a week, up to twenty or twenty-five thousand dollars ; and that under this arrangement the above species of manufactured paper was imposed upon them, as and for the trade paper of the firm, and that a large amount was due and unpaid. Bennett, who was a witness for the defendants, as well as a defendant, swore, that the arrangement was not exclusively for the trade or business paper of the firm, although he admitted that it was talked of, and its character discussed in making the arrangement. He also admitted, that when he offered the paper for discount, he did not inform the directors of the bank of its character, as he knew, if he did, that they would not have discounted it. Holden, the only surviving member of the committee of the bank which made the arrangement, testified, that Bennett conveyed the idea to him that the paper to be offered was the trade paper of the defendants, and that so the committee reported to the bank ; and the cashier and several of the directors of the bank testified, that upon this representation they discounted the paper offered by the defendants, and would not have discounted it, had they not believed it to be as represented. It appeared, however, from the list of paper discounted by the plaintiffs for the defendants, that three pieces of the paper so discounted were signed by one of the members of the firm, and made payable to it.

Upon this part of the case, the judge who presided at the trial, in substance, instructed the jury, that if they found from the evidence, that under a proposition made by the defendants and accepted by the plaintiffs, to discount for the former their trade paper, the defendants palmed upon the plaintiffs as such trade paper, paper got up at their mill, signed by their irresponsible

workmen, and the plaintiffs were deceived and injured thereby, they might recover therefor in this action, although the jury did not find that such fraud was designed by the defendants at the time when such prospective proposition was made and accepted, if the same was designed at the time when the paper was offered under such proposition; the jury being at liberty, if the proof warranted it, in deeming the proposition impliedly repeated at each fraudulent offer of such paper under it, although such paper was not in existence at the time such prospective arrangement for discounts was made, and although the plaintiffs were at liberty, at each offer, to reject the paper as not conformable to the arrangement.

The jury having found for the plaintiffs a verdict for $28,307.55, the defendants, upon the ground that the court misdirected the jury in matter of law, in the above instruction, and also, upon the ground that the verdict was against the weight of the evidence, now moved for a new trial. By agreement, the minutes of evidence, taken by the judge who presided at the trial, were to be used at the hearing of the motion.

*Eames, with whom was T. A. Jenckes, for the motion :*—

I. The action of deceit will not lie, when, as in this case, the subject of the representation, namely, the paper to be discounted, was not in existence at the time the representations were alleged to have been made; and no act or representation was proved when the paper came into existence, from which it could be inferred that the representation was repeated at the time the paper was offered for discount.

II. The plaintiff, by ordinary vigilance and attention, could have ascertained the character of the paper offered by the defendants for discount, and in such case the action of deceit cannot be sustained. *Brown* v. *Castles,* 11 Cush. 348, 351, and cases cited.

*B. N. Lapham, against the motion :*—

I. The well-settled rule of law is, that if one person, by false representations, known to him to be false, or not believed by him to be true, induces another to alter his situation to his injury, he is liable for the damages occasioned thereby.

II. It is of no consequence that the arrangement for the discounts was prior to the offer of paper, because, every offer under

it must be considered as one in conformity to it, unless notice be given to the contrary.

III. Neither is it material when the design to defraud was conceived, provided it was at or before the time of doing a fraudulent act, or making a fraudulent representation.

AMES, C. J.   It is plain that a gross fraud has been practiced upon the plaintiffs, by palming off upon them worthless paper for discount to a large amount, manufactured by the defendants for this purpose, at the same place, and by the same hands that manufactured their jewelry.   Two juries have passed upon the facts of the case, with the same result; once, upon the submission of evidence by the plaintiffs only; and at the last trial, upon a full submission and discussion of evidence, on both sides.   There was some conflict of testimony on the point whether the representations charged in the declaration to be false and fraudulent were made, and especially whether the arrangement for discounts, entered into between the plaintiffs and defendants, was confined exclusively to the trade or business paper of the latter; but upon this the jury have passed, and we see no good reason to disturb their verdict.   That a moral fraud has been perpetrated by the defendants upon the plaintiffs in this matter, no one can deny; the principal perpetrator himself testifying that he did not inform the plaintiffs of the character of the paper that he offered for discount, knowing if he did, that they would not discount it; in other words, admitting that, at the time of offer, he knew that he was deceiving them.   Indeed, the simulation of the business paper of the defendant's firm by the variety of the amounts inserted, in dollars and cents, and by the false dating and places of payment, to correspond with their known places of sale, not only indicates fraud, but implies a consciousness of an arrangement with the plaintiffs by virtue of which they were to have business paper, and aids their proof that thus it was positively agreed.

Admitting, then, that this positive arrangement, looking to the future, as found by the verdict, was made, and that both parties understood that the business paper only of the defendants was to be offered to the plaintiffs for discount, the question made upon the remaining ground for a new trial is, whether, when the defendants fraudulently offered for discount, under this arrangement,

the worthless stuff which they got up to simulate their business paper, they did not, coupling the prospective arrangement with the offer, falsely and fraudulently represent to the plaintiffs, that the paper offered was their business paper, as alleged in this declaration? It seems to us that one must be more nice than wise,—more taken up with the show of things than with their substance,—who can entertain an opinion to the contrary. It is evident, and the jury have found, that this paper was offered by the defendants and accepted by the plaintiffs for discount, as the business paper of the firm of J. H. Sturdy & Co.; and its real character, and the fraudulent contrivances of the defendants to make it appear to be the business paper of their firm, satisfy, with the consequential injury suffered by the plaintiffs, the other requisites necessary to support an action for deceit.

It is said that the paper, the subject of the supposed false representation, did not exist at the time that the representation was made; and for that reason, legally considered, this transaction was a mere breach of agreement. The easy answer is, that the arrangement was a prospective and continuing one; and that the successive offers under it, as the offers of this simulated paper clearly were, was a recognition and reassertion of the representation contained in it, made at the time of each offer. The very statement under oath of the offerer, that he gave no notice to the plaintiffs of the character of this paper, because he knew that if he did, they would not discount it, is complete evidence to this effect. Such conduct was, indeed, a breach of the agreement with the plaintiffs, but like many other breaches of agreement, it has another element in it, which renders it capable of sustaining an action for deceit, as a false and fraudulent representation.

It is undoubtedly true, as suggested at the argument, that cases may be found to the point, that deceit will not lie for a false affirmation, when he who sustains damage from it might, by ordinary vigilance and attention, have ascertained that the statement upon which he acted was false. But these cases do not apply to affirmations of facts, as in this case, peculiarly, if not exclusively, within the knowledge of the defendants; and especially where fraudulent contrivances have been resorted to, to make the subject of the affirmation seem to be what it was rep-

resented. *Brown and others* v. *Castles*, 11 Cush. 348, and cases cited. In such a case it comes with a peculiarly ill grace from the defendants, that reliance upon their truth and honor prevented minute and searching enquiry, and enabled them to defraud.

This motion must be overruled upon all the grounds upon which it rests, and judgment be entered upon the verdict.